UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC APPLE, a/k/a ERIC BIG BOY,<br><br>Defendant. | CR. 19-50081-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Eric Apple, appearing *pro se*, filed a motion for compassionate release dated April 29, 2020. (Docket 46). Mr. Apple filed a second *pro se* motion for compassionate release dated June 8, 2020. (Docket 51). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD"), the United States Attorney for the District of South Dakota, and Mr. Apple filed records, submissions and briefing on his motion. (Dockets 50 & 53-55). The court construes both *pro se* motions together. For the reasons stated below, defendant's motions are denied.

**AMENDED STANDING ORDER 20-06**

Amended Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions

---

[1]See https://www.sdd.uscourts.gov/socraa.

under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). By the amended standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. ¶ 4. Those categories are:

   a.  High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

   b.  Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

   c.  Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

   d.  Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.

### MR. APPLE'S CLASSIFICATION

On May 8, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Apple as a Low Priority case. (Docket 47).

### FACTUAL BACKGROUND

Mr. Apple pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(B). (Dockets

25 & 26).   On January 24, 2020, Mr. Apple was sentenced to a term of imprisonment of 60 months followed by four years of supervised release. (Dockets 42 & 44 at pp. 2-3).   Based on a presentence investigation report, Mr. Apple's advisory guideline range was 87 to 108 months of imprisonment based on a total offense level of 27 and his criminal history category III.   (Docket 38   ¶ 71).   The court granted a substantial downward variance in sentence after considering Mr. Apple's community ties, employment record, work ethic, drug and alcohol dependence, and remorse, among others.   (Docket 44-1 at pp. 3-5).

Mr. Apple is currently an inmate at FTC Oklahoma City, an administrative security transfer facility, in Oklahoma City, Oklahoma.   Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked Apr.22, 2021). The total inmate population at FTC Oklahoma City is currently 1,225 persons. https://www.bop.gov.locations/institutions/ftw/ (last checked Apr.22, 2021). As of April 22, 2021, there were three active COVID-19 cases among inmates and five among staff.   https:www.bop.gov/coronavirus/ (last checked Apr. 22, 2021).   There have been two inmate deaths as a result of COVID-19 and 489 inmates and 66 staff had recovered from COVID-19 at FTC Oklahoma City.   Id.

Mr. Apple has a scheduled release date of September 12, 2023.   See https://www.bop.gov/inmateloc/.   The court estimates Mr. Apple will be eligible for home detention on March 12, 2023.   Mr. Apple is 44 years old. See https://www.bop.gov/inmateloc/.

**MR. APPLE'S MOTION**

Mr. Apple's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his confinement during the COVID-19 pandemic.  (Docket 46 at pp. 2-3; Docket 51 at pp. 1-3).  Mr. Apple urges the court to recognize his age, first time offender status, low recidivism score, and low security rating in support of his request.  (Docket 46 at p. 2). He asserts the health of his elderly parents and their status as sole caregivers to Mr. Apple's 13-year-old daughter and multiple nieces and nephews constitute extraordinary and compelling reasons for compassionate release. Id. at p. 3.  On June 2, 2020, the FPD docketed a notice of intent not to supplement Mr. Apple's *pro se* motions.

Though Mr. Apple does not raise any specific concerns regarding his medical conditions and how such conditions potentially put him at more significant risk of severe illness from COVID-19, the court has undertaken an independent review of his medical records.  Mr. Apple's medical records confirm the following medical conditions:

- Unspecified (affective) mood disorder.  (Docket 50 at p. 60);
- Multiple eye-related conditions.  Id.;
- Derangement of patella.  Id.; and
- Resolved probable case of COVID-19.  Id.

Mr. Apple's conditions are managed with acetaminophen, ketorolac ophthalmic solution, ofloxacin ophthalmic solution, mitrazapine and trazadone

for depression.  Id. at pp. 67-68.  Mr. Apple is 71 inches tall and his most recent recorded weight is 236 pounds.  Id. at p. 20.  Based on his height and weight, Mr. Apple has a body mass index (BMI) of 32.9, which is in the obese category.  See Adult BMI Calculator, Ctr. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/English bmi_calculator/bmi_calculator.html (last checked Feb. 16, 2021).

## UNITED STATES' OPPOSITION

The government opposes Mr. Apple's motion for compassionate release. (Docket 55).  First, the government argues Mr. Apple should be denied compassionate release because he refused a COVID-19 test in May 2020, and later had a positive case of COVID-19.  Id. at pp. 3-4.  Second, the government argues Mr. Apple does not meet any of the categories supporting compassionate release as outlined in U.S.S.G. § 1B1.13, Application Note 1(A)-(D).  Id. at pp. 6-7.  Third, the government argues "a defendant [who] cannot demonstrate that he . . . has a medical condition that puts him at risk for COVID-19 cannot demonstrate 'extraordinary and compelling' circumstances." Id. at 8.  Next, the government asserts "[t]he existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself . . . provide a basis for a sentence reduction."  Id. at p. 9.  The government additionally reminds the court of the measures implemented by the Bureau of Prisons ("BOP") to modify its operations plan to address the pandemic.  Id. at pp. 9-11.

Finally, the government argues the 18 U.S.C. § 3553(a) factors weigh against granting Mr. Apple compassionate release. Id. at pp. 13-14. According to the government, Mr. Apple failed to demonstrate he is not a danger to the safety of the community. Id. at p. 13. Furthermore, the government notes Mr. Apple already received a significant reduction by the court's sentence and the nature of his crime does not warrant an additional reduction. Id. at p. 14.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute. 18 U.S.C. § 3582(c)(1)(A)(i). The government does not contend that Mr. Apple failed to exhaust his administrative remedies. See generally Docket 55. Accordingly, the court will address the merits of Mr. Apple's request.

### Extraordinary and Compelling Reasons

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). That task was left to the United States Sentencing Commission. See 28 U.S.C. § 994(t). Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the

criteria to be applied and a list of specific examples." See id. Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling. U.S.S.G. § 1B1.13 comment. n.1. The four categories have not been updated since December 2018 when the First Step Act became law.[2]

The court previously surveyed the status of the law as to a court's authority under the First Step Act. E.g., United States v. Thunder Hawk, CR. 14-50008, 2021 WL 253456, at *5 (D.S.D. Jan. 26, 2021); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109, at *4-5 (D.S.D. Dec. 11, 2020); United States v. King, CR. 15-50050, 2020 WL 6146446, at *4-5 (D.S.D. Oct. 20, 2020). A summary of that survey is sufficient here.

This court has held it retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release."[3] E.g., Magnuson, 2020 WL 7318109, at *5 (quoting United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020)); see also McCoy, 981 F.3d at 283 ("As of now,

---

[2]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

[3]The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declined to do so. United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020) and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).

there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); and United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act. Despite the expanded authority under the First Step Act, the court finds Mr. Apple has not met his burden of proof by presenting "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

Mr. Apple relies on his age, being incarcerated during the COVID-19 pandemic and his family circumstances as extraordinary and compelling

reasons warranting compassionate release.  See generally Dockets 46 & 51.  Mr. Apple is 44 years old.

Adults of any age are at increased risk of severe illness from COVID-19 if they have certain conditions.  Recently, the CDC updated its understanding of the health conditions increasing the risk from COVID-19.  See People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Mar. 29, 2021).[4]  The CDC now states individuals with the following conditions *can* be more likely to become severely ill from COVID-19: cancer, chronic kidney disease at any stage, chronic lung diseases (including moderate to severe asthma, chronic obstructive pulmonary disease ("COPD"), cystic fibrosis and pulmonary hypertension), dementia or other neurological conditions, diabetes (type 1 or type 2), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies or hypertension), HIV infection, immunocompromised state, liver disease, overweight and obesity, being a current or former smoker, history of stroke or cerebrovascular disease, substance abuse disorders and several others.  Id.  The CDC's guidance to clinicians explains: "[t]he risk of severe COVID-19 increases as the number of underlying medical conditions increases in an individual." https://www.cdc.

---

[4]The CDC also identified certain conditions that *might* increase the risk from COVID-19, including moderate to severe asthma, cystic fibrosis, hypertension, HIV, neurologic conditions, liver disease, pulmonary fibrosis, type 1 diabetes, and several others.  Id.  Mr. Apple has none of these conditions.

gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated Mar. 29, 2021).

Mr. Apple falls into the obese category with a BMI over 30, which is one of the conditions the CDC finds increases the risk of COVID-19, but he has no other risk increasing medical conditions. In fact, his medical records generally note he has an "unremarkable" prior medical history. (Docket 53 at p. 1).

While the court recognizes that because of obesity Mr. Apple is at a higher risk if he were to contract the virus, it cannot conclude that this condition alone is an extraordinary and compelling reason to warrant compassionate release. Mr. Apple himself did not raise this condition as an issue, though that is not dispositive to the court's analysis. The court finds Mr. Apple has not met his burden of proof and presented "extraordinary and compelling reasons" based on his age and medical conditions warranting a sentence reduction under § 3582(c)(1)(A)(i).

Several courts, including courts in the District of South Dakota, have concluded that obesity on its own during the COVID-19 pandemic does not necessarily warrant a reduction in sentence for extraordinary and compelling reasons. See United States v. Williams, CRIMINAL ACTION No. 15-571-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); United States v. McAbee, CR. 14-40027, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); United States v. Saenz, CR. 10-30027-

01, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons).

The court also recognizes the BOP's recent implementation of a COVID-19 vaccination program.  BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last checked Apr. 22, 2021).  As of April 21, 2021, 137,845 doses have been administered system wide.  Id.  Those numbers are increasing significantly with each day.  At FTC Oklahoma City 126 staff and 110 inmates were fully inoculated as of April 22, 2021.  Id.  According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

Id.

The court also considered Mr. Apple's family circumstances under U.S.S.G. § 1B1.13, Application Note 1(C)(i), which contemplates compassionate release when "[t]he death or incapacitation of the caregiver of the defendant's minor child" has occurred.  The court is not without sympathy for Mr. Apple's elderly parents' plight of being responsible for his 13-year-old daughter and other nieces and nephews.  There is no evidence before the court beyond Mr.

11

Apple's assertions that supports his release for the family circumstances contemplated by Application Note 1(C).

### 3553(a) Factors

The court concludes the § 3553(a) factors do not support relief. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the defendant, among others. 18 U.S.C. § 3553(a)(1)-(7). A detailed analysis of these factors is unnecessary. Mr. Apple received the benefit of a substantial reduction in sentence from the advisory guideline range of 87 to 108 months. The court sentenced him to the mandatory minimum sentence of 60 months. That sentence was chosen with care to reflect the seriousness of his offense, provide appropriate punishment and to recognize the positive characteristics of Mr. Apple including his demonstrated work ethic, services to the community and potential for rehabilitation. See generally Dockets 44 ¶ 44-1. To his credit, Mr. Apple appears to be on the right path and sincerely devoted to learning from this time in custody.

**ORDER**

No good cause having been proven, it is

ORDERED that defendant's motions for compassionate release (Dockets 46 and 51) are denied.

Dated April 23, 2021.

                      BY THE COURT:

                      /s/ *Jeffrey L. Viken*
                      JEFFREY L. VIKEN
                      UNITED STATES DISTRICT JUDGE